All rise. The Illinois Appellate Court Workers' Compensation Comm'n is now in session. Justice William E. Holdridge presiding. All rise and proceed. Madam Clerk, please call the first case. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Counsel, good morning. My name is Tommy Strau, here today on behalf of the petitioner in this case, Linda Dye. Your Honors, we're asking you to reverse the finding of the Commission in this matter. Fundamentally, what we're asking is that this Commission approve respective medical benefits for my client's indentation in her right forehead, right in front of the temporal area. The Commission ultimately decided that there was no observable disfigurement as a basis for its decision. They rely on the opinion of Dr. Bresch, Rakesh Garg? Rakesh Garg. But didn't he also say, though, that she had a dent? He acknowledged some type of a deformity, did he not? He did. He did, Your Honor. And basically what the Commission has said and what Counsel argues is that Dr. Garg, who was a neurologist, had said there was nothing else that needed to be done for her. And his specialty is neurology. It's not plastic surgery. He's not a skin doctor of any kind. So Dr. Garg had said, yes, there is something there. I observed the dent. But it's not going to be a quote-unquote problem, whatever that means. But again, the reason for the referral to Dr. Garg from Dr. Ricca was because she was having headaches at that time. There's no evidence that this referral specifically was for Dr. Garg to look at, whether or not there was some kind of neurological deficit due to this dent in the head. So he basically says from a neurological standpoint, it's not going to create a problem. Correct. It's limited to that context. Correct. That's correct. And our argument is that, look, Dr. Lomax from Soderstrom Dermatology operates in an entirely different field of medicine. And the analogy that I make is let's say you have somebody that suffers some kind of orthopedic injury and a burn injury at the same time. Just because you send somebody to an orthopedic doctor and the doctor says, look, there's nothing else I can do for this person's physical orthopedic injuries, that doesn't mean that there's not still something that can't be done to fix the skin graft problem. It's an entirely different issue. The two cases that are cited by the main cases, Supreme Court cases, are superior mining and corn products. We rely on corn products. But as I was reading the briefs again today on the write-up to the court, both cases really have to do with permanency and the finding of disfigurement and how that relates to each other. If we take a step back even further from that, though, this was a 19b8a hearing for prospective medicals specifically. Now, it could be, as I argue, that if she were to get this prospective medical, it could take out of the picture her ability to even qualify for any disfigurement. Because if the procedure works, it would flatten out the dent in her head and it wouldn't be there. So really the two cases that both of us rely on are not necessarily even on point specifically to this question about the prospective medical. Interestingly, in my mind, a case that counsel cites in his brief, the University of Illinois case, just for a general principle of law on 8a, it says the purpose of 8a, when we think about it, is to cure the effects of any injury. And that's to cure the effect of an injury. My client, Ms. Dye, since this accident has been walking around with a dent in her head. And it's described as 2 centimeters by 1 centimeter by Dr. Lomax. And he specifically is able to identify a procedure that the doctor could do to correct the deformity. And he specifically calls it a deformity. So when we get into the definition of what a disfigurement is under the law, one of the specific definitions is a deformity. Well, Dr. Lomax specifically calls it a deformity. Nobody else says that it's not observable. It's there. And so when you look at the definition, it meets the definition. Does the deformity have to be observable? Does it have to be abnormal? Observable. Observable. Well, when you look at the disfigurement cases that are cited, the Supreme Court in Superior Mining said, look, when you're looking at permanency on disfigurement, the purpose of the act is not to reward every trifling mark, is the language that they use. But in that specific case, they were looking at somebody where they had their eye open, and you couldn't see anything with the naked eye. For you to actually observe whatever disfigurement was being alleged, you actually had to lift the eyelid to see a little mark. And they said that's a trifling mark. And so they said, well, let's look at the case of the one that was compared to the scar in corn products, which was a three-quarter inch scar below the hairline on the forehead. And in that case, at the commission, the commission had said that qualifies as a disfigurement. And so we know this isn't a trifling mark. Well, Your Honor, I think we have to look at how the Supreme Court has defined what a trifling mark is Well, the arbitrator in his decision didn't even describe it. He didn't. And I think perhaps that is a fault of myself as counselor for not making sure that he did describe it specifically. I asked him to take a look at it, and basically his response was, so what you're saying is this procedure would fix that indentation. And that's what he said, that indentation. And I don't know how to take that. I mean, that could be, you've got to be kidding me, or it could be, yeah, that's fairly significant. Well, I think if we take, this is a manifest way to the evidence case. I do think if we take the rest of the evidence that we have on that issue, taking the arbitrator outside of it, you have a two-centimeter by one-centimeter mark. We know that that's there. That's an indentation. We know that it's serious enough that there is a cosmetic procedure that can be done to fix it. If it was that trifling, if it was that non-serious, would there even be a recommendation for a $1,200 procedure to take fat out of the hip or the leg and inject it into the head? And in terms of it being observable, again, it's not, even though the arbitrator didn't say anything, we have a description in the record that it is in front of the temporal hairline. You know, we know what our temple is. It's in front of the temporal hairline. That description is in the record. Counsel in their brief says, well, we don't know from anything in the record whether she has to brush her hair back, but we do because it's in front of the temporal hairline. So it's on her face. This is a woman that suffered an injury at work that's undisputed. She has an indentation, an effect from the injury that is still there that she walks around with every day that is ‑‑ I'm curious what to make of the fact that there's no photograph. Maybe the commission concluded there isn't a photograph because it was so trifling, a photograph wouldn't even show the injury. Again, as a matter of how these cases would perhaps be handled in the future, I think a photograph or a more specific identification from the arbitrator would be useful to everybody, clearly. But as I point out, it was not the arbitrator that made a specific finding that this was not an observable disfigurement. The arbitrator decided against the case on an alleged two‑doctor rule violation, which was never there because the specific referral was in the record from Dr. Ricke to Dr. Garg and it even mentioned in Dr. Garg's record that the referral was from Dr. Ricke. But that's the reason the arbitrator decided against this at that level, not on the basis that there was no disfigurement. They said, no, you violated the two‑doctor rule, so anything with Dr. Soderstrom's office doesn't have to be covered. The commission says where the evidence is at best unclear as to whether the claimant has an observable disfigurement. First of all, this is one of those cases where the commission didn't see the evidence, nor could they possibly view the evidence. It would be like a blind man describing color. They never saw it. But the arbitrator did. And the arbitrator, when asked to take notice of the area, responds by asking whether Dr. Lomax was, quote, proposing to repair that indentation. The arbitrator saw it. The commission didn't see anything. So how could they come to the conclusion that she didn't have an observable disfigurement if they never saw it? I agree with Your Honor. But that goes back to the problem of they're relying and having to go back and look at the medical records and the descriptions that are in there, and they're saying, well, based on what we see, we don't think it's observable. But I submit that the manifest way to the evidence is that it was observable, and you're right that they didn't see it. The arbitrator saw it. Everybody acknowledged it. The doctor for the claimant, the doctor for the employer, and the arbitrator said that indentation. Everyone who looked at it said there was a dent in her head, correct? Absolutely. No doctor that she went to ever said we have to pull back her hair, we can't see it, we don't know what it is. And then Dr. Lomax specifically did the 2 centimeter by 1 centimeter, you know, actually measured it. Counsel faults the doctor for not making a depth measurement and then postulates that we don't know from the record whether the arbitrator had a feel around on her head to feel whether there was a dent. But, you know, that's perhaps reading a little bit too much into the record. I would submit that perhaps the simplest explanation tends to be the correct one, that the arbitrator looks at it and says as far as an indentation. Yes. That's the arbitrator himself. That's correct. And, again, the arbitrator was not the one to say that there was no mark. It was the commission that did not have the opportunity to view. The arbitrator had made the decision based on the two doctor rule. So every single physician that saw her in the record notes the indentation. And, again, it's in front of the temporal hairline. Nobody says that it's not observable. So if you're strictly looking at the two cases that have been cited on the issue of disfigurement, corn products and superior mining, this appears to be much closer to corn products where it's an observable disfigurement on the face rather than something that's hid absent physical observation like superior mining. And on that basis, if we look at this case, and if you look at somebody that did not have this dent before the accident, she has an accident that's not disputed. She has a dent in her head that she is now expected to walk around with the rest of her life, an effect, which is what 8A is supposed to be there for, an effect from an injury, that a specific doctor has said this can cure the defect. And perhaps that cures her ability to get any disfigurement award. But, as I say, that's her choice. Why shouldn't she at least have the right to prospective medical to go in and get a simple injection to flat out the area so that she doesn't have to walk around as a female in our society with a dent in her head for the rest of her life that she didn't ask for, that she didn't have before this injury? So we looked at this case and honestly thought it was a penalties case. And it's odd that the commission actually awarded the medical bill to Soderstrom Dermatology. Frankly, that's inconsistent in and of itself. They're saying, yes, it makes sense for you to be able to go to the Soderstrom and figure out whether or not there's something that can be done. But if somebody tells you that something can be done, never mind, you can't do it. That's inconsistent within the commission's decision anyway. So we thought this was a penalty situation, that they hadn't approved anything. The two-doctor rule was really a phantom argument anyway, because the specific referrals were in the record. And then now there's an argument about the clinic. If you go to a clinic, that shouldn't mean you can go to every doctor, even though, as I point out, the law on that is that very fact. This Court has held that if you go to a clinic, that is your choice of physician, not a specific doctor within a clinic. Frankly, that there's not penalties in this case for failure to pay for this bill for Soderstrom is against the manifest way of the evidence. Not only should this Court award the prospective medical, we honestly believe there should be a finding of penalties for failure to approve this reasonable, necessary treatment recommended by the cosmetic surgeon. So on that basis, we do ask that this Court overturn the commission on this issue and remand back for the prospective medical to occur and for further findings. Thank you. Thank you, counsel. Before you begin, counsel, Madam Clerk, could you bring us some cups for the water? The bailiff never, if you want, just take them from the podium there, please. Counsel won't mind. We'll replenish those cups if we run out of them today. Thank you. The bailiff is gone. I appreciate that. Thank you so much. Thank you. Good morning. Brad Elwood on behalf of Plymouth 2. I think counsel's argument has a, I don't want to be punny and say a facial appeal to it, but I think counsel's argument is overly simplistic in this case because he's talking about indentation. When we read Section 8C on disfigurement, it doesn't say indentation awards. It talks about disfigurement. It talks about serious and permanent disfigurement to the head, hand, face, et cetera. What about 8A? I think 8A in this case, first of all, is qualified by the notion of is this a serious and permanent disfigurement from 8C. I don't think 8A is a blanket call for any type of treatment that the Petitioner would say they need in this situation. Well, can we agree 8A essentially exists to cure the effects of an injury, cure or relieve, as it's quoted, from the effects of an injury? Unless I missed something, everyone agrees there's a, quote, unquote, dent or indentation in her head. Yes. The question is, is it significant or not? Well, is she required to walk around with a dent in her head for the rest of her life? The question is, is it significant because we. Who says it's insignificant? Well, first of all, the Industrial Commission does, or the Workers' Compensation Commission. They didn't say anything. I don't know how they could say anything about whether it's significant or not. We saw nothing. As the Court pointed out, there's a couple aspects. As the Court pointed out, the arbitrator did. The arbitrator referenced this as an indentation, didn't talk about this as a disfigurement. And I disagree with counsel when he says that the sole basis for denying this future medical, prospective medical, is based on the two-doctor rule. If you look at page one of the arbitrator's decision, when the arbitrator is specifically talking about that portion, section K, whether the petitioner is entitled to prospective medical care, the first thing that the arbitrator says, it refers to Dr. Gard's opinions. February 11, 2009, and it notes that the neurological examination was completely normal. I do not think there needs to be anything else done at this time. Then they make a reference to the two-doctor rule. But they denied it for two reasons. One, Gard never said that she didn't have a disfigurement. He merely said that there was nothing that could, the dent will not cause claimant any trouble in the future. Scars don't necessarily cause people trouble. No, but they do when they're compensable. They're there. They do when they're compensable. Because if you look at the Superior Mining case, it talks about, it talks about that it has to have some aspect of the, as they put it, While it's not necessary that it should be a showing of actual loss of living power before compensation can be made for a disfigurement, the evidence ought to show the disfigurement bears some relation to the capability to earn and secure profitable employment. You're saying if somebody's left with an 8-inch scar running down the middle of their forehead, that in and of itself is not compensable under 8-inch? I think that would be a serious and, as, how they put it, serious and permanent disfigurement. Superior Mining defines the term disfigurement as that which impairs or injures the beauty, symmetry, or appearance of a person or thing, that which renders unsightly, mishappen, or imperfect, or deforms in some manner. Yes. Dents in your head deform you. Depending on what the dent is. Superior Mining also comes back and says the Act does not provide compensation for every mark, scar, nor every disfigurement. Disfigurement is one of those things that the Commission struggles with all the time, because obviously it's subjective. There's no test, there's no standard. It's a matter of taking a look at it and saying, does this rise to the level of a disfigurement? Mr. Elber, if somebody said to you in casual conversation, you know, you have a dent in the middle of your forehead, a dent, does it need to go, that's not somehow disfiguring, a dent in the middle of your forehead? Well, I guess my question that I'd ask is... Maybe you're less sensitive than some people, but... Maybe I could use a dent now and then. I guess my first question that I would ask people is, what is a dent? Everybody defines a dent differently. Theoretically, if we want to talk about a dent per se, yeah, some circumstances I agree with everything the Court just said. But in other circumstances, I'm not going to. And it's going to depend on the facts of the case. Now, the Court brought up a good question. What in this evidence shows that this dent or indentation that rises to the level of a serious and permanent disfigurement? That answer is nothing. What about Lomax? Why is he proposing this revisionary surgery if it's some minor point that's nothing? Dermatologists remove molds. They remove skin tabs. Does that make that a disfigurement? Well, this is beyond a skin tag and a mold, isn't it? It's a dent. All we know from his testimony, his report, is that it's a one centimeter by two. It's about the size of a lieutenant's bar in the military. We don't have any... We pointed out in our brief that it's important to know how deep this is. And I think that's a very important thing. If you look at the snuff box on your hand, if you move your hand a certain way, you can see there's a slight indentation there where the snuff box is on your thumb. But if you really move your thumb, now you've got a serious indentation. Now, if we're talking about this, that might be compensable under certain circumstances. If we're talking about a very mild one, it may not be. Here, how does this Court know? When I look at this, I ask myself, they're coming before you and saying this is against the manifest way of the evidence. Normally your response is, well, show me how. And what are they saying? Well, we have a doctor who says it's a one centimeter by two centimeter indentation. Where's the photograph? Where's the description? They talk about the hairline. Well, I don't have a whole lot of... So you're saying, in essence, this case is turning on your subjective feeling about what is a significant dent. Yes, because you have your doctor, the claimant's doctor, and the arbitrator noticing a dent. That's not disputed, is it? No, there's an indentation. Your argument has to be this is not a significant dent, correct? Exactly. That's the simplest argument. It's not a significant dent. It's not my interpretation, Your Honor. Well, who said it wasn't a significant dent? Pardon me? Who says it wasn't a significant dent? The Commission did, and I think the Commission looked at the fact... What burden is it to prove it is a significant dent? It's their burden. Well, now, hold on a second. Hold on a second. The only thing the Commission says is it wasn't an observable disfigurement. Every doctor that looked at this woman said she either had a dent, she had a small indentation, she had a 2-centimeter by 1-centimeter indentation, and the arbitrator says she has an indentation. Where did the Commission get the idea that she didn't have an observable disfigurement? Did they see anything? Because the Commission... I know we're not supposed to cite to Commission decisions before this Court, and I'm not doing that as authority. Good job. But what I want to do is I want to say, when the Commission talked about what they considered a disfigurement and whether this rises to the level, they cited another case where that did, and it was a Commission case, and they cited a case where there was a physical imperfection that caused tightness. It was a scar. It caused tightness when the person moved. And they found there was a physical aspect of it, and they said that that was a compensable disfigurement. And they said this case does not rise to that level. But, Slott, they said it was not observable. How do they know it wasn't observable if they never looked? And everybody else saw it. Because I think the Commission recognizes here that there's a difference between an observable indentation and a disfigurement for the purpose of a compensable injury under the Act. But based on what? Based on what facts in the record that they would come to that conclusion? There's nothing in the record to indicate that this was a disfigurement, that it was serious, that it was a permanent. There's nothing to indicate that this is a serious disfigurement. I think what my colleagues are suggesting is that this record is inadequate to make a conclusion that the Commission made. I mean, not inadequate, but the conclusion they made is inconsistent with the observations of the arbitrator. The arbitrator observed that there was an indent. He didn't say that I find this to be a disfigurement. I think that's crucial. It's their burden to come in and present the record. I feel like I'm being asked to prove a negative here. There's nothing in this record to show that this is a disfigurement as we would look. Now, the Court raised the question. They have to have some evidence to base their conclusion that this was not observable. What is that evidence? There's none. There's no evidence that this is observable. What do you mean it's not observable? You want me to read the doctor's names that found dent, found indentation, found two centimeters by one centimeter? It's observable when someone is asked to take a look at it. That doesn't mean that I'm looking at you, Your Honor, and say I see you have an observable scar on your forehead. That's very different than I want you to take a look at this doctor and see if there's a scar. I'm serious. I'll give you some leeway, but I'm not letting you go this far. If they say it's not observable, you show me where there's evidence that says it isn't. There's no evidence to support that conclusion in this record. None. The evidence here is that there is an indentation. What we don't know, and I think what the Commission strapped on to, is that that indentation does not rise to the level of a disfigurement. What we're saying is that any time anybody has an indentation, it's automatically a disfigurement just because a doctor looked at it. We don't know the circumstances. We're always looking at what the Commission does and saying, well, we can infer this, we can infer that. Well, here, we can infer that the Commission looked at this record and said, where's the evidence to say this is ‑‑ Didn't Lomax describe it, though, Mr. Overton? Didn't Dr. Lomax describe it and also describe the proposed revisionary surgery? Yeah, he did. Okay. Well, then that doesn't ‑‑ I can't tell anything from that. I don't ‑‑ Well, we rely on doctors in this forum all the time, don't we? Well, sometimes they're inarticulate, and I think this is a case where they are. This is a case of burden proof. Where's the evidence? Why didn't they put a photograph in so we could all end this right now? Why didn't they have someone describe this in detail? Why didn't they have measurements of the indent? Because they had the body of the claimant in front of the arbitrator, and they had the arbitrator look at it. Now, if the Commission wants to disagree with the arbitrator, they better have some evidence to do it with. The Commission, I think, was following what the arbitrator found, and there's not a serious condition here. Why didn't the arbitrator make a comment and find this is a disfigurement? If we look at the case that they cite in their brief, they didn't have anything in the record either, but the arbitrator looked at it and found it to be a disfigurement. That's wholly different than what we have here today. We have an arbitrator looking at it and saying, I see an indent. And I don't mean to be callous, but big deal. You've got to show that there's more than just an indentation. Otherwise, we've dumbed down this type of injury to a point where I walk in, I say, I've got an indent that results, I need to get medical for it, and it's related. I don't think that's how the system works anymore. But if you bring in a doctor's report that says it backs it up, that's a little different than you just walking in and saying, you know, I want something done about this. This doctor's report, I think, was worthless. And I think the arbitrator and the Commission found it to be. The arbitrator, remember, the arbitrator, when they were denying penalties, addressed the fact that they didn't think that there was anything else that needed to be done for this injury. And I think when we're looking at this, this was a case where this was presented. This was presented as a concussion, a trauma injury to the head. And then we've got this indent that's a sideshow, really, to the whole production. And I think that there's more than enough evidence to support what they did. I think this is a classic manifest weight case. It's not as clean as we'd like, certainly. But ask yourself, if they're asking me to affirm based on what, what shows that an opposite result is clearly apparent? And I don't see it. I just don't see it on this record. It's not here. Because there's no basis for the Commission's finding. Because there's no basis for the Commission's finding that it's unobservable, number one, and because everybody saw it. I would urge the Court to give some serious thought to whether there's a difference between a simple indentation and whether that automatically, as a matter of law, that's the way I take the comments, as a matter of law, that rises to the level of a disfigurement. Even though it may be observable, it's not compensable. Superior mining says that. In the holding of the Illinois Supreme Court decision, it says that the act does not provide compensation for every mark or scar, nor every disfigurement. That says it right there. It's kind of one of the arguments you would say, is that if it must be called to one's attention by some affirmative act, that that would suggest that it is trifling and not compensable. Exactly. And that's what we really don't know here today. I don't think that we can make an assumption. We're going to have to make, as a Court, the Court's going to have to make an inference that this condition, this indentation, was readily apparent to the doctor, not that the doctor was asked to inspect something. Is that the hairline? If I'm a woman and I have long hair, is that my hairline? My hairline's up here. My hair hangs down here. Can I see it? I don't know. Probably not. With me, yeah, you can see it. It's a different fact situation, different fact pattern. And the reason the arbitrator relied on Dr. Garg is because Garg says, it's not going to give her any trouble, therefore, I don't think anything else needs to be done. Correct. Scars don't necessarily give people trouble. Well, sometimes they do, because they get tight and they pull and they limit our range of motion. Well, sometimes they don't. And people have scars that are ugly and they don't hurt them. They don't give them any trouble, but they're disfiguring. But there's a difference between a long, gashing scar that's left that may not have any physical limitations imposed on it, but it qualifies as a serious disfigurement under the Act and it would be compensable. And that's very different than an indentation that may or may not have to be strained to see. We don't know that in this case. They didn't present that case. Why not lose for failure proof? They ought to. I think they should. Now, I would point this out. Counsel, your time is up. Thank you. I appreciate it. We ask that you affirm. Counsel, you may reply. Thank you, Your Honors. A few brief points on rebuttal. It was obvious. All the doctors saw it. They didn't say they had to strain to see it. The arbitrator didn't say he had to strain to see it. I think based on this argument, we seem to be moving beyond the point of this question of whether really it was observable because everybody noticed it without saying they had to strain to see it. The question was then legally, is that a disfigurement? Well, look at what Dr. Lomax said. He specifically said that the injection would cure the disfigurement. So if we want to look for someplace to find the word disfigured to make this easier, it's there in Dr. Lomax's record. He calls it a disfigurement. He calls it disfiguring? He does. He specifically uses the word disfigure in his medical records. Are all disfigurements compensable, though, under the law? Well, a disfigurement, if you define it as a disfigurement, yes, it is. But not every trifling mark rises to the level of a disfigurement, Your Honor. So I would say that under the law, a disfigurement does. If that's how it's being parsed out, that you have to have a legal definition of a disfigurement, then as this Court was doing, define what a disfigurement meant. To make less beautiful, to be not asymmetrical. We now have a dent on one side of the head that's not on the other side of the head that's due to the injury. And again, it's not trifling if you have a specific doctor that says, I have a cosmetic procedure that can fix the problem. And the doctor says, to answer Mr. Elwood's question, he finds it's disfiguring. He does.  He does. Does the record reflect the cost of this prospective treatment? It is in the record. I don't recall it offhand. The number that's always bouncing around in my head is like $1,200. And I did, at the time I got that amount from Dr. Lomax, I forwarded it to counsel, and that's, counsel refused to pay for it. That's why I ended up at a 19b8a hearing on that issue. And again, if you want to talk about disfigurement, would she have been even entitled to a permanency if I went in on nature and extent? Maybe that's an arguable question. But if we separate it out to an 8a hearing, we have a doctor that says they can help so that Ms. Dye does not have to walk around the rest of her life with a dent in her head. And everybody calls it a dent. And we shorten it from indentation, but it is, it's a dent. We all know what a dent means. Nobody call it anything else but a dent. And so on that basis, we do ask that this Court overturn the commission, and frankly, not just on the issue of the prospective medical, but also on the issue of penalties. Because it was unreasonable and vexatious that we had to go to the commission and arbitrator to try this case to begin with when this was an observable disfigurement that should have been cured by Dr. Lomax. Thank you. Thank you, counsel, both, for your arguments this morning. A matter to be taken under advisement. This position shall issue.